Orien H. Anderson v. Commissioner.
Orien v. Commissioner
Docket No. 14655.
United States Tax Court
1949 Tax Ct. Memo LEXIS 110; 8 T.C.M. (CCH) 740; T.C.M. (RIA) 49204; August 16, 1949
*110 1. Certain deductions allowed and others disallowed. 2. Amounts of net operating losses, carry-overs and carry-backs, determined. 3. Petitioner was entitled to an exemption as head of family. John Moore Robinson, Esq., Bank of America Bldg., Los Angeles, Calif., for the petitioner. R. E. Maiden, Jr., Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $5,067.94 in the petitioner's income and victory tax liability for the year 1943. By an amendment to his answer, the respondent asked that the deficiency be increased to $5,505.45. The petitioner's correct tax liability for the years 1942, 1944 and 1945 is also indirectly at issue by reason of the statutory provisions relating to the carryover and carry-back of net operating losses. The issues are: 1. The inclusion in the petitioner's income of $1,820.89 in 1942 received by her as interest from the Mutual Life Insurance Company of New York. 2. The deductibility of legal and accounting fees paid in 1942. 3. The disallowance of $13,541.68 representing a net operating loss carry-back from 1944 to 1942. 4. The amount of gain, if any, *111 on the sale of real property in 1942. 5. The deductibility of $2,926.57 paid in 1943 as traveling expenses and accountants' and investigators' fees and expenses. 6. The disallowance of a net operating carry-back loss of $3,033.71 from 1945 to 1943. 7. The right of the petitioner to an exemption as the head of a family in 1942 and 1943. 8. The disallowance of tax and assessments paid in 1943. Findings of Fact The petitioner resides in Los Angeles, California. She filed her income tax returns for the years under consideration with the collector of internal revenue for the sixth district of California. The petitioner is the widow of Harold S. Anderson, hereinafter called the decedent, who died intestate in the County of Los Angeles on December 27, 1941, leaving surviving him his widow; three adult sons by a former marriage; and a minor son, William Todd Anderson, the sole issue of his marriage to the petitioner. H. S. Anderson, Jr., one of the adult sons of decedent, was appointed administrator of the estate on February 19, 1942, and the petitioner was appointed guardian of her son's estate. At the time of his death the decedent owned considerable real and personal property *112 and was also a member of three copartnerships, as follows: 1. A partnership consisting of the decedent, owner of a 75 per cent interest, and his son, H. S. Anderson, Jr., owner of a 25 per cent interest therein. 2. A partnership composed of the decedent, owner of a 40 per cent interest, and his adult sons, Robert W. Anderson, owner of a 30 per cent interest; John Hardy Anderson, owner of a 20 per cent interest; and H. S. Anderson, Jr., owner of a 10 per cent interest therein. 3. A partnership consisting of the decedent, owner of a 50 per cent interest, and his brother, Walter D. Anderson, owner of a like interest therein. All of these partnerships were engaged in the subsistence or commissary business and operated various units in California, Nevada, Alaska and Texas. The decedent also carried substantial life insurance policies. Soon after the decedent's death a controversy arose between the petitioner and the decedent's adult sons over the rights which she and her son had in decedent's estate. The question of the extent and character of such interests as separate or community property was also involved. The petitioner thereupon in 1942 required and secured the services *113 of attorneys and accountants to negotiate with her stepsons and the administrator in order to obtain a maximum share in the estate and income therefrom and also to assist her in carrying on the various businesses. The petitioner continued her active interest, as surviving spouse, in the partnerships with her stepsons under December 11, 1942. On that date an agreement was entered into by the petitioner, her three stepsons, H. S. Anderson, Jr., as administrator of the estate, and the petitioner as guardian for her minor son. The agreement provided for the payment of certain sums to the estate to be distributed to the heirs-at-law of the decedent upon proper court order, and stipulated that the petitioner should receive one-third of such distributions. Proper court orders duly approved and confirmed the contract. Subsequent to the execution of the contract, the petitioner's attorneys obtained an additional payment of $18,000 from the decedent's adult sons, representing an additional share in the various partnership incomes. It was agreed that the funds should be set up as a trust for William Todd Anderson. The petitioner had the benefit of the advice of Norman W. Church, who was *114 her child's godfather and also one of the decedent's close friends. The petitioner paid him nothing for his advice and services. In 1942 she employed several attorneys and accountants to assist her in the operation and management of her several partnership interests. The total amount expended by her for such purposes was $11,677.20. The partnership of the decedent with his brother Walter, called the Texas partnership, was established some years prior to the decedent's death. Walter was an eccentric person, diffident, and with little business sense. The decedent wanted to give him a chance to become self-supporting through managing the enterprise which originally was a small one. Church and the petitioner's lawyers felt that if the business were properly run it might produce a large income. Consequently, the petitioner, who had purchased a one-half interest from the estate and had become a partner of Walter, sent an accountant to Beaumont and Orange, Texas, where the business was being conducted, in order to set up adequate books and records. Walter Anderson resented any "interference" and treated the accountant insultingly. Upon advice from the petitioner's attorneys the accountant *115 was directed to secure a local accountant to take over the work. Nelson Richardson was so employed. It required some time for him to establish proper partnership books. He also undertook to maintain pleasant contacts with the shipbuilding company in whose plant the commissary of the Texas partnership was located. Walter Anderson violated regulations in the conduct of the partnership business. Richardson so reported to the petitioner and her attorneys and they went to Texas to attempt to remedy the situation since Walter Anderson was thus jeopardizing the business. In 1943 the petitioner expended $2,926.57 and in 1944 the sum of $11,362.72 for legal and accounting fees, traveling expenses, telephone and telegraph messages and similar charges in order to prevent the mismanagement of the enterprise and to carry on, protect and conserve her interests therein. The business was placed in receivership in 1945. In 1938 the petitioner purchased real property in Kentucky at a cost of $5,000. The property consisted of an old house and 25 acres of land in Pee Wee Valley, near Louisville. The petitioner had a well dug; installed plumbing, bathroom fixtures and an electric pump; added a room; *116 replaced the roof; replaced barns; altered windows; built a roadway and new fences and cleared about 10 acres of land, at a total cost of $3,065. The labor was done chiefly by her father and brother at no cost to her. The petitioner also paid her attorney $250 for his services in legal matters, making purchases and superintending the installation of the capital improvements, and $425 in connection with the sale of the property. The total cost of the property to her was $8,740. The petitioner sold the property in 1942 for $9,000. Her capital gain in the transaction was $260. In the year 1945 the petitioner suffered a net operating loss of $3,033.71 as her share of the operation of the Texas partnership. During the years 1942 and 1943 the petitioner was head of a family and maintained in her own household and at her own expense her minor son, William Todd Anderson. He was suffering from a protracted illness. In each of the years 1943, 1944 and 1945, the petitioner received interest from the Penn Mutual Life Insurance Company in the sum of $1,250.28. Such amounts were not reported in the income tax returns of the petitioner for those years. Due consideration will be given these *117 amounts in the recomputation under Rule 50. The Commissioner's disallowance of the claimed deduction was based largely on the lack of substantiation. The petitioner filed claims for refunds of $13,747.34 and $11,983.57 covering portions of her income taxes paid for the years 1942 and 1943, respectively. The Commissioner allowed neither claim. Opinion VAN FOSSAN, Judge: In the first issue the petitioner offered no proof that she did not receive in 1942 the $1,820.89 as interest from the Penn Mutual Life Insurance Company of New York and did not mention the item in her brief. Therefore, we assume that she has abandoned the issue and we sustain the respondent's determination in that respect. The second issue presents the deductibility of legal and accounting fees and expenses claimed to have been expended by the petitioner in 1942 to the extent of $12,177.20. We have found as a fact that the sum of $11,677.20 was so spent. The respondent argues that the expenses were incurred only to determine the value of the decedent's various property interests and how they were held. He concedes that the expenses may be allocated to income and corpus (the former being allowable) but he argues *118 that the petitioner has failed to prove the proper proportion used for each purpose. The petitioner contends that it was not a matter of securing a property which she did not have or own but of asserting and proving her existing rights to income and income-producing property. She states that from the first she participated in the management of the partnership and that the expenditures were necessitated by the controversy with her stepsons which arose during the joint management and operation of the businesses. A similar situation developed in the Texas partnership, with more acute and disturbing features and with greater potential disaster. The record is in accord with the petitioner's view. There is no doubt that she was engaged in business and that the expenses were incurred to carry on and preserve that business. The above expenditures aggregating $11,677.20 are allowable deductions from the petitioner's gross income in 1942. All charges for services performed for the petitioner's son were separately billed in amounts allowed by the Probate Court and are not included in the said $11,677.20 so expended by the petitioner. The third issue involves the disallowance of a net operating *119 loss carry-back from the year 1944 to the year 1942. The petitioner's problems relating to the conduct of the affairs of the Texas partnership by her brother-in-law, Walter Anderson, have been set forth in the facts. It is obvious that in 1944 the petitioner was actively engaged in managing the venture both personally and through her duly selected and constituted agents of the legal and accounting professions. She was attempting not only to carry on the business but to rescue it from the eventual bankruptcy which Walter's erratic behavior constantly threatened. In fact, the partnership was placed in receivership in 1945. The petitioner expended in 1944 a total of $11,362.72 for legal and accounting fees, traveling expenses, telephone and telegraph messages and like items. The respondent concedes that $11,187.72 of that sum is a proper amount to be allowed as a carry-back provided the statutory conditions are met. He argues that the expenses were not incurred in or attributable to the operation of a trade or business regularly carried on by the petitioner. He states that they were occasioned by the necessity of obtaining financial and operating statements of the business for her own *120 benefit. The respondent's position is not well taken. The petitioner, personally and through her agents, engaged in the actual determination of partnership policies and methods of operation, the establishment and maintenance of pleasant and peaceful business relations with its customers and the inauguration of adequate books and records. The submission of reports to her by her agents was only incidental to the primary objective - that of carrying on the business successfully. The amount of $11,362.72 expended by the petitioner for the purposes heretofore set forth constitutes an allowable carry-back of net operating loss from the year 1944 to the year 1942. In the fourth issue the petitioner has established that she paid $5,000 for the house and 25 acres of land in Kentucky. She proceeded to remodel and modernize the house and to improve the land at a total cost of $3,740, including legal fees directly related to the initial cost and to the subsequent improvements and sale of the property. There is no question that all the expenditures were capital in character. The sale in 1942 at $9,000 resulted in a capital gain of $260 and the petitioner may be so taxed. The fifth issue *121 raises the question of the deductibility of $2,926.57 paid by the petitioner during the taxable year for traveling expenses, legal and accounting fees, telephone tolls, etc. The factual basis for the allowance of these items is established by the record. Therefore, the deduction for these items also is allowed. In the sixth issue the petitioner asks for a net operating carry-back loss of $3,033.71 from 1945 to the taxable year. Respondent claims a failure of proof. We do not agree, as indicated in the findings of fact. No other objection having been made by the respondent to such item, the claim is allowed. Petitioner's claim to exemption as the head of a family, presented in the seventh issue, is well-founded. During 1942 and 1943, petitioner maintained a home and supported her minor son therein. He was suffering from an extended illness and required the care of a physician. All such expenses were borne by the petitioner. She is entitled to an exemption as the head of a family during the years 1942 and 1943. In the eighth issue the petitioner failed to offer proof of payment of the taxes and assessments sufficient in amount and character to entitle her to the deductions sought. *122 Consequently, the respondent's action in disallowing the deductions is approved. Decision will be entered under Rule 50.